# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CORNELIOUS CLARK,

        Plaintiff,

v.                                  Case No. 04-C-890

MILWAUKEE COUNTY,

        Defendant.

## DECISION AND ORDER

*Pro se* plaintiff Cornelious Clark ("Clark"), who is black, commenced this action against his employer, defendant Milwaukee County ("County"), alleging violations of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The Court granted Clark leave to proceed *in forma pauperis* indicating that Clark claimed that he had been disciplined more harshly than a white co-worker for violating workplace rules. (Court's September 30, 2004, Decision and Order, 1.)

The County's motion for summary judgment in its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is before the Court for resolution. The Court set an August 31, 2006, deadline for Clark to file a response to the County's summary judgment motion and advised Clark that if he did not respond to the motion, any factual assertion in the County's affidavit(s) or other admissible documentary evidence would be accepted by the Court as true unless Clark submitted his own affidavit(s) or other admissible documentary

evidence contradicting the factual assertion. (Court's August 2, 2006, Decision and Order, 4 (citing Civil L.R. 56.1 (E.D. Wis.)).) Clark did not file any response.

### *Standard for Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A party "opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248; also citing *Celotex Corp.*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *United States v. Rode Corp.*, 996 F.2d 174, 178 (7th Cir. 1993)).

"Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the Court

2

must consider the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

Failure to respond to a summary judgment motion does not automatically result in judgment against the non-moving party. *See Cunningham*, 30 F.3d at 883. "A party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Id*. (citations omitted).

*Relevant Facts*[1]

Clark was a worker in the Facilities Management Division of the County Public Works Department ("Facilities") at the County Courthouse Complex ("Courthouse"). In that position, Clark was responsible for cleaning offices and common areas in the Courthouse after business hours. Clark possessed keys to allow him to do that work.

---

[1]Unless otherwise stated the relevant facts are based on the County's proposed findings of fact ("PFOF"). Pursuant to Civil L.R. 56.2 (E.D. Wis.), the Court "must" conclude that there is no genuine dispute of material fact as to the County's proposed findings of fact because Clark did not respond to them.

Clark's complaint states that: "I declare under penalty of perjury that the foregoing is true and correct." By declaring under penalty of perjury that his complaint is true and signing the document, Clark has verified his complaint pursuant to 28 U.S.C. § 1746. Thus, in addressing County's summary judgment motion, the factual assertions in Clark's complaint which comply with the requirements of Fed. R. Civ. P. 56(e) are considered as if they were made in an affidavit. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

Clark and John Maniaci ("Maniaci"),[2] a white co-worker, watched television in the Office of the County Corporation Counsel ("Corporation Counsel").[3] (Compl., unnumbered insert after p. 4.)

John Dehli ("Dehli") was the Director of Facilities and was responsible for supervising all workers in that division, including Clark. Dehli received a complaint from the Office of the Corporation Counsel that someone had been using that office's conference room after hours without authorization. Dehli was informed that the conference room couch was damaged and the conference room carpet was stained. He was also informed that abandoned food items were found in the conference room.

Dehli began an investigation of the complaint and arranged for a video camera to be installed in the conference room. On May 15, 2003, the video camera was installed. (*Id*). On May 15, 2003, Larry Lauer ("Lauer") told Maniaci that the video camera had been installed and that, if he did not tell anyone else that the video camera had been installed, Maniaci would only get a written verbal reprimand. (*Id*.) Clark was not told by Lauer that the video camera had been installed. (*Id*.)

---

[2]Clark's complaint and the County's answer state the name of Clark's co-worker is "Maniaci." (Compl. unnumbered insert after p. 4; Answer ¶ 2). The County's proposed findings of fact use the name "Maniacci." (County's PFOF ¶¶ 13-16.) Since the parties' submission provide no indication of which name is correct, the Court has used the name of Clark's co-worker set forth in the parties' original filings.


[3]Clark's complaint states that he and Maniaci had watched television in that office for several years. (Compl., unnumbered insert after p. 4.) The County's proposed findings of fact state that Maniaci only worked for the County for a few months. (County's PFOF ¶ 15.) Because Clark did not respond to the County's proposed findings of fact, the Court must conclude that there is no genuine dispute of material fact as to the County's proposed findings of fact. *See* Civil L.R. 56.2(e).

4

Dehli neither warned Maniaci nor directed any County employee to inform Maniaci that the Corporation Counsel's office was being videotaped. Dehli does not have knowledge that anyone informed Maniaci that the Corporation Counsel's office was being videotaped.

The videotape obtained in the conference room recorded a figure which was identified as Clark. On the videotape, Clark appeared on numerous occasions, watching television, eating, talking on the telephone, and sleeping on the couch for about 12 hours.

When the videotape was obtained, Clark was an hourly employee scheduled to work from 4:00 p.m. to 12:00 a.m. He was paid for working eight hours with a 20-minute break from 8:00 p.m. to 8:20 p.m. The policy was that breaks were to be taken in the basement facilities' locker room or in the lunchroom. Clark was never authorized to take his breaks in the Corporation Counsel's office or conference room.

When Clark was confronted with the information regarding his use of the conference room, Clark did not deny that he had visited locations which were not authorized by his work assignments, that he had taken longer breaks than his 20-minute authorized break, and that he had used the Corporation Counsel's office for purposes other than his work including sleeping, watching television, and using the telephone without authorization. Clark claimed that his supervisors had authorized the longer breaks and his unauthorized use of County property,[4] but Dehli conducted an investigation and found no such authorization.

---

[4]To the extent this sentence and the preceding sentence are contradictory, they reflect the County's proposed findings. (See County's PFOF ¶¶ 11-12.)

During his five years as a County employee, Clark had accumulated workplace violations, reprimands and suspensions. Clark's extensive history of disregard for the County's work rules, policies and procedures prompted Dehli to take disciplinary action against Clark.[5]

Dehli does not recall observing Maniaci on the videotape. Maniaci had no workplace violations.

*Analysis*

Clark's discrimination claims arise under Title VII of the United States Code which makes it unlawful for an employer to ". . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove intentional discrimination under Title VII through direct or circumstantial evidence (direct method) or resort to the familiar indirect burden-shifting method described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Dandy v. United Parcel Service*, 388 F.3d 263, 272 (7th Cir. 2004). Direct evidence can take two forms. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) The first is an outright admission by the decisionmaker that the challenged action was undertaken because of the plaintiff's race. *See Id.* (citations omitted). The second consists of a "convincing mosaic of circumstantial evidence . . . that point[s] directly to a discriminatory reason for the employer's action." *Id.*

---

[5]Neither Clark's verified complaint nor the County's proposed findings of fact state the date that Clark was disciplined or the nature of the discipline.

Review of the file does not disclose that Clark has any direct evidence of discrimination by Dehli, the decision-maker regarding the discipline. *See Davis*, 368 F.3d at 783. Therefore, Clark must proceed under the indirect method burden-shifting method of proof. Under this approach, Clark must first establish a *prima facie* case of race discrimination. To do that, he "must demonstrate that: (1) he belongs to a protected class; (2) his performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated others not in his protected class received more favorable treatment." *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

If Clark succeeds in establishing a *prima facie* case of race discrimination, the burden of production shifts to the County to offer a legitimate and non-discriminatory reason for the alleged discrimination. *Id.* If the County meets this production burden, Clark may then rebut that evidence by showing that the County's reasons are a pretext for discrimination. *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003) (citations omitted). A pretext is a deliberate falsehood. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). "An honest mistake, however dumb, is not, and if there is no doubt that it is the real reason it blocks the case at the summary-judgment stage." *Id.*

The County maintains that Clark cannot establish a *prima facie* case of race discrimination because his performance did not meet the County's legitimate expectations and

7

he has not identified any similarly situated white employee who was treated more favorably than he was treated. The County also contends that even if Clark could establish a *prima facie* case, his claim would fail because he lacks evidence of pretext.

With respect to the first and third prongs of a *prima facie* case, it is undisputed that Clark is a member of a protected class and that he suffered an adverse employment action when he was disciplined. In asserting that Clark was not performing in accordance with the County's legitimate job expectations (the second prong of a *prima facie* case), the County contends that "Clark was a very poor employee with a very long history of disciplinary action." (County's Mem. Supp. S.J., 5-6.) The County cites paragraphs 15 through 18 of its proposed findings of fact and exhibit 2 in support of its motion for summary judgment (copies of documents from Clark's personnel file relating to discipline). (*Id*.)

The County states that "Dehli states in his affidavit[] . . . that Clark received ten verbal/written reprimands, three suspension, and two reprimands during his approximately four years as a County employee."[6] *Id*. The County is mistaken. Dehli's affidavit does not contain that statement. (*See* County's Exs. Supp. S.J. Mot., Ex. 1 [Dehli Aff.].) Even more importantly, the statement is not contained in the County's proposed findings of fact, as required by Civil L.R. 56.2. Thus, the County's statement in its brief regarding the number of times Clark received specific types of discipline is not properly before the Court and will not be considered. *See* Civil L.R. 56.2(d).

---

[6]The reference to four years conflicts with undisputed fact that Clark had been employed by the County for five years at the time of challenged discipline.

Nonetheless, the record establishes that Clark had accumulated workplace violations, reprimands and suspensions during his five years as a County employee. Clark was not a model employee. However, construing the evidence in the light most favorable to Clark, the Court notes that the County continued to employ him for five years despite his shortcomings. While it is a close question, for purposes of summary judgment the Court concludes that Clark was performing according to the County's legitimate job expectations. *See Ballance v. City of Springfield*, 424 F.3d 614, 618 (7th Cir. 2005).

But, despite Clark's claim that Maniaci, a white co-worker, was treated more favorably than he, Clark has not shown that Maniaci was similarly situated – the fourth prong of a *prima facie* case. To be similarly situated, an employee must be directly comparable to the plaintiff in all material respects. *Brummett*, 414 F.3d at 692-93. Dehli supervised all the facilities workers. Clark and Maniaci were similarly situated in that regard. *See Id*. However, unlike Clark, Maniaci had no disciplinary record. Though Maniaci was disciplined less harshly, his disciplinary record was different from Clark's – it did not exist. Clark has not presented evidence that similarly situated employees not in his protected class received more favorable treatment. *Id*. Thus, Clark cannot establish a *prima facie* case of race discrimination with regard to the discipline imposed upon him.

Moreover, even if Clark could demonstrate a *prima facie* case, the County has presented a legitimate and non-discriminatory reason for the alleged discrimination. *Id*. Dehli relied on Clark's extensive disciplinary history in deciding what discipline to impose upon Clark. Despite construing the facts in the light most favorable to Clark, there is no indication

9

that the County's reason for the discipline chosen for Clark was a deliberate falsehood. *See Forrester*, 453 F.3d at 419. Thus, Clark's Title VII race discrimination claim based on the discipline he received as the result of his unauthorized presence and activities in the Corporation Counsel's office is subject to dismissal upon summary judgment.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The County's motion for summary judgment dismissing Clark's Title VII race discrimination claim based on the discipline Clark received as the result of his unauthorized presence and activities in the Corporation Counsel's office is **GRANTED**,

This action is **DISMISSED**, and

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of September, 2006.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**